INTERCRAFT INDUSTRIES CORP. v. KAREN M. MORRISON AND EMPLOY-
MENT SECURITY COMMISSION OF NORTH CAROLINA

No. 154A81

(Filed 30 March 1982)

**Master and Servant § 108.1— unemployment compensation—absence caused by failure to find child care not "willful misconduct"**

In an action concerning unemployment compensation benefits, the evidence was sufficient to permit the Commission to find that claimant's unexcused absence because she "just couldn't find child care" was for good cause and did not constitute "misconduct" connected with her work so as to disqualify her for unemployment compensation benefits. G.S. 96-14(2).

Justice CARLTON dissenting.

Justices COPELAND and MEYER join in this dissenting opinion.

APPEAL by plaintiff employer pursuant to G.S. 7A-30(2) from the decision of the North Carolina Court of Appeals (*Whichard, J.,* with *Hill, J.,* concurring and *Hedrick, J.,* dissenting) reported at 54 N.C. App. 225, --- S.E. 2d --- (1981), affirming a judgment by *Lee, J.,* at the 8 September 1980 Session of WAKE County Superior Court which affirmed a decision by defendant Employment Security Commission that defendant employee, claimant Karen M. Morrison, was not disqualified from receiving unemployment compensation benefits.

Testimony and evidence taken by an Employment Security Commission Appeals Referee on 15 April 1980 tended to show that the employer's absentee policy, of which the claimant was advised, permitted a maximum of six days of unexcused absence within a twelve month period and that a total of ten days of unexcused absences would result in termination of employment. Claimant was hired by employer on 4 September 1979.

On 22 January 1980, claimant was informed by written notice that if she incurred one more unexcused absence in the next thirty days she would be subject to further discipline. On 15 February 1980, claimant was advised by written notification that her absence on 7 February 1980 was unexcused and that another unexcused absence within thirty days would result in job termination. On Saturday, 16 February 1980, claimant was absent from "mandatory overtime" work of which she had notice. Claimant

notified the employer that she could not work that day because she couldn't find child care, and she testified at the hearing that "I couldn't work on Saturday because I didn't have a babysitter and that was the only reason." She admitted that most of her absences were from Saturday work.

The Commission made three findings of fact, to-wit:

1. Claimant last worked for Intercraft Industries on February 18, 1980. From February 17, 1980 until February 23, 1980, claimant has registered for work and continued to report to an employment office of the Commission and has made a claim for benefits in accordance with G.S. 96-15(a).

2. Claimant was discharged from this job for being absent on February 16, 1980, a scheduled day of overtime work. She was absent because she had no child care that day. The absence was not excused.

3. The claimant had been warned, and was aware, that ten (10) unexcused absences within a twelve-month period would result in her discharge. The absence on February 16, 1980, was her tenth unexcused absence.

The Commission then concluded that "the employer has the responsibility to show that a claimant for benefits was discharged for misconduct within the meaning of the law" and that the employer failed to show that the employee was disqualified for benefits "because the evidence fails to show that claimant was discharged from the job for misconduct connected with the work."

The Wake County Superior Court judgment affirmed the Commission's decision in its entirety based upon a review of the competent evidence contained in the record.

*Pope, McMillian, Gourley & Kutteh, by William H. McMillian, for plaintiff.*

*Employment Security Commission of North Carolina, by T. S. Whitaker, Acting Chief Counsel, V. Henry Gransee, Jr., Staff Attorney, and Thelma M. Hill, Staff Attorney, for defendant-appellant.*

BRANCH, Chief Justice.

The question presented by this appeal is whether claimant's unexcused absence from work on 16 February 1980, which

violated her employer's rule and which was due to her inability to secure child care, constituted "misconduct" connected with her work so as to disqualify her for unemployment compensation benefits.

G.S. 96-14(2), in part, provides:

> An individual shall be disqualified for benefits . . . if it is determined by the Commission that such individual is, at the time such claim is filed, unemployed because he was discharged for misconduct connected with his work.

This Court has not defined "misconduct" in the context of the statute. However, the rule recognized by our Court of Appeals and the majority of the courts of other jurisdictions is that misconduct sufficient to disqualify a discharged employee from receiving unemployment compensation is conduct which shows a wanton or wilful disregard for the employer's interest, a deliberate violation of the employer's rules, or a wrongful intent. *See In re Collingsworth,* 17 N.C. App. 340, 194 S.E. 2d 210 (1973), and cases there cited, 76 Am. Jur. 2d, *Unemployment Compensation* § 52 (1975); *Beaunit Mills, Inc. v. Division of Employment Security,* 43 N.J. Super. 172, 128 A. 2d 20 (1956); *Checker Cab Co. v. Industrial Comm.,* 242 Wisc. 429, 8 N.W. 2d 286 (1943). *See also* Annot., Unemployment Compensation - Misconduct, 26 A.L.R. 3d 1356, § 3 at 1359 (1969). We adopt this majority rule.

The obvious reasons for such a rule are to prevent benefits of the statute from going to persons who cause their unemployment by such callous, wanton, and deliberate misbehavior as would reasonably justify their discharge by an employer, and to prevent the dissipation of employment funds by persons engaged in such disqualifying acts.

Our research discloses that it is generally recognized that chronic or persistent absenteeism, in the face of warnings, and without good cause may constitute wilful misconduct. *See* Annot., Unemployment Compensation - Absenteeism, 58 A.L.R. 3d 674, § 3 at p. 685 (1974); Annot., Unemployment Compensation -Absences, 41 A.L.R. 2d 1158, § 3 at p. 1160 (1955). However, a violation of a work rule is not wilful misconduct if the evidence shows that the employee's actions were reasonable and were taken with good cause. *In re Collingsworth, supra; Kindrew v.*

*Unemployment Comp. Bd.,* 37 Pa. Commw. Ct. 9, 388 A. 2d 801 (1978); *Unemployment Comp. Bd. v. Iacano,* 30 Pa. Commw. Ct. 51, 357 A. 2d 239 (1976); *Boynton Cab. Co. v. Neubeck,* 237 Wisc. 249, 296 N.W. 636 (1941). This Court has defined a "good cause" to be a reason which would be deemed by reasonable men and women valid and not indicative of an unwillingness to work. *In re Watson,* 273 N.C. 629, 161 S.E. 2d 1 (1968); *see also, In re Clark,* 47 N.C. App. 163, 266 S.E. 2d 854 (1980).

Ordinarily a claimant is presumed to be entitled to benefits under the Unemployment Compensation Act, but this is a rebuttable presumption with the burden on the employer to show circumstances which disqualify the claimant. *Kelleher Unemployment Comp. Case,* 175 Pa. Super. 261, 104 A. 2d 171 (1954). *See also* Annot., Unemployment Compensation - Absenteeism, 58 A.L.R. 3d 674 (1974). We note in passing that the employer did not except to or attack the statement of the Commission in its decision that the employer had the responsibility to show that a claimant for benefits was discharged for misconduct within the meaning of the law.

G.S. 150A-1 exempts the Employment Security Commission from the provisions of Chapter 150A, the Administrative Procedure Act. However, our case law recognizes that an appeal from an administrative decision constitutes an exception to the judgment and presents the question whether the facts found are sufficient to support the judgment, *i.e.,* whether the court correctly applied the law to the facts found. *In re Burris,* 261 N.C. 450, 135 S.E. 2d 27 (1964). In considering an appeal from a decision of the Employment Security Commission, the reviewing court must (1) determine whether there was evidence before the Commission to support its findings of fact and (2) decide whether the facts found sustain the Commission's conclusions of law and its resulting decision. *Employment Security Comm. v. Jarrell,* 231 N.C. 381, 57 S.E. 2d 403 (1950).

On the question of "good cause" for claimant's unexcused absence on 16 February 1980, the record discloses a showing by claimant that she "just couldn't find child care" on that date. This evidence was sufficient to permit, but not require, the Commission to find that claimant's unexcused absence was for good cause. *Kelleher Unemployment Comp. Case,* 175 Pa. Super. at 264, 104 A. 2d at 173.

We wish to make it clear that it is our opinion that, depending on circumstances disclosed by the evidence, the lack of child care may or may not be "good cause" for an unexcused absence from work. This is a matter for the factfinder, here the Commission, to decide.

In instant case, the claimant offered uncontroverted evidence tending to show good cause. Employer, who had the burden of showing claimant to be disqualified to recieve benefits under the Act, offered nothing to refute claimant's showing. Thus, there was competent evidence to support the Commission's findings favorable to claimant, and these findings are conclusive on appeal. *In re Thomas*, 281 N.C. 598, 189 S.E. 2d 245 (1972). We are of the opinion that the findings, though sparse, support the Commission's conclusions of law and the conclusions of law sustained the Commission's decision. We note parenthetically that had employer offered any evidence to negate claimant's evidence of "good cause" the Commission should have made a specific finding as to whether "good cause" existed.

For the reasons stated, the decision of the Court of Appeals is

Affirmed.

Justice CARLTON dissenting.

I respectfully dissent from the majority opinion for the same reasons given by Judge Hedrick in his dissent in the Court of Appeals' opinion. 54 N.C. App. 225, --- S.E. 2d --- (1981).

Justices COPELAND and MEYER join in this dissenting opinion.